NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1360
_____

EDWIN A. BLAISURE, Individually and on behalf
of Classes of Similarly Situated Persons,

Appellant

v.

SUSQUEHANNA COUNTY;
NICHOLAS CONIGLIARO,
Individually and in his official capacity as
Warden of the Susquehanna County Correctional Facility
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-10-cv-02336)
District Judge:  Honorable A. Richard Caputo
_____

Submitted Under Third Circuit LAR 34.1(a)
October 8, 2015

Before:  McKEE, *Chief Judge*, AMBRO and HARDIMAN, *Circuit Judges*.

(Filed: November 4, 2015)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Edwin Blaisure appeals the District Court's summary judgment in favor of Susquehanna County. We will affirm.

I

For six weeks in 2010, Blaisure was held in Susquehanna County Correctional Facility (SCCF) as a pretrial detainee. During that period, he left SCCF three times: to attend a proceeding in state court; to attend a proceeding before a state magistrate judge; and to go to the dentist. Pursuant to SCCF's policy of strip searching every inmate upon their departure from and arrival to prison, Blaisure was strip searched twice on all three occasions.

In November 2010, Blaisure brought a putative class action on behalf of himself and other similarly situated inmates, claiming that SCCF's strip search policy violated his Fourth Amendment rights. Shortly thereafter, the Supreme Court decided *Florence v. Board of Chosen Freeholders of the County of Burlington*, which held that a regulation requiring strip searches of every inmate who entered a prison did not violate the Fourth Amendment because it was reasonably related to legitimate penological interests— namely, preserving and protecting prison security. 132 S. Ct. 1510, 1517–18 (2012). The County then moved for summary judgment asserting, *inter alia*, that SCCF's strip search policy was constitutional under *Florence*. The District Court granted the motion and

2

Blaisure now appeals.[1]

## II

We exercise plenary review over the District Court's summary judgment and apply the same standard it did. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). We affirm a summary judgment when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III

On appeal, Blaisure has narrowed his claim substantially. He now argues only that SCCF's blanket policy of strip searching inmates upon *leaving* the prison to attend court appearances violates their Fourth Amendment rights because it is unrelated to prison security or keeping contraband out of jail. Blaisure Br. 9 (citing *Florence*, 132 S. Ct. at 1514 (explaining that a prison strip search policy must be implemented "in response to problems of jail security")). He asserts that, as a resident of SCCF, he was already prohibited from possessing contraband and therefore should not have to be searched prior to leaving. He also claims that because the two strip searches he contests occurred before trips to the courthouse—which has its own security protocols—they were not related to any legitimate penological interest. Because these searches "violate a person's most basic

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.

3

privacy interests," Blaisure argues, SCCF shouldn't be allowed to conduct them without providing evidence that they address actual problems of jail security. Blaisure Br. 20.

In *Florence*, the Supreme Court reiterated that prison regulations may interfere with important constitutional interests so long as they are "reasonably related to legitimate penological interests." 132 S. Ct. at 1515 (quoting *Turner v. Safley*, 482 U.S. 78, 82 (1987)). The Court recognized, moreover, that correctional officials must be given "substantial discretion to devise reasonable solutions to the problems they face," *id.*, and that "courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to the problems of jail security," *id.* at 1513–14.

Here, as in *Florence*, SCCF's policy of strip searching inmates leaving the prison to appear in court was reasonably related to legitimate penological interests. As the District Court found, the searches prevented inmates from smuggling weapons or contraband out of prison that could harm prison security guards, transporting officers, court personnel, or even members of the public. *See Goff v. Nix*, 803 F.2d 358, 368 (8th Cir. 1986) (holding that a prison's policy of strip searching inmates who are leaving did not violate their Fourth Amendment rights and noting in particular that "the public nature of courts and the frequently crowded surroundings make the presence of a weapon that the inmate has managed to smuggle with him . . . particularly dangerous"). Further evidence of SCCF's penological interest in searching inmates upon leaving prison was

4

found in Warden Nicholas Conigliaro's testimony that inmates have crafted makeshift weapons while behind bars and that the reason "nothing has been found [when prisoners leaving SCCF have been searched] is because it's not a secret that they're going to be strip-searched leaving the facility." App. 90.

In sum, because the District Court did not err in finding that SCCF's strip search policy serves a legitimate penological interest, we will affirm.